1

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT

8                   EASTERN DISTRICT OF CALIFORNIA

9

10  SIERRA FOREST LEGACY; CENTER,
    FOR BIOLOGICAL DIVERSITY;              No. 2:05-cv-00205-MCE-GGH
11  NATURAL RESOURCES DEFENSE
    COUNCIL, SIERRA CLUB, and THE
12  WILDERNESS SOCIETY, non-profit
    organizations,
13
            Plaintiffs,
14
        v.                                 ORDER DENYING PLAINTIFFS'
15                                          MOTION FOR INJUNCTION
    MARK REY, in his official capacity      PENDING APPEAL AND
16  as Under Secretary of Agriculture,     GRANTING PARTIAL STAY OF
    DALE BOSWORTH, in his official         REMEDY ORDER
17  capacity as Chief of the United
    States Forest Service, JACK
18  BLACKWELL, in his official capacity
    as Regional Forester, Region 5,
19  United Sates Forest Service, and
    JAMES M. PENA, in his official
20  capacity as Forest Supervisor,
    Plumas National Forest,
21
            Defendants.
22
        and
23
    TUOLUMNE COUNTY ALLIANCE FOR
24  RESOURCES & ENVIRONMENT, et al.;
    CALIFORNIA SKI INDUSTRY ASS'N; QUINCY
25  LIBRARY GROUP, et al.; and
    CALIFORNIA CATTLEMEN'S ASS'N,
26
            Defendants-Intervenors.
27
                        ----oo0oo----
28

1

This Court has resolved the liability issues raised in four related cases challenging the 2004 Sierra Nevada Forest Plan Amendment (also referred to as the "2004 Framework" or the "SNFPA").  Moreover, in separate proceedings, the Court has crafted an appropriate remedy.[1]  Plaintiffs in this case, a group of environmental organizations, have appealed this Court's rulings and now seek an injunction requiring that Forest Service timber harvesting projects comply with the 2001 Framework pending completion of the appellate process.  Plaintiffs also ask that the Court stay the portion of its order requiring the Forest Service to prepare a Supplemental Environmental Impact Statement ("SEIS") by May 1, 2010.

For the reasons set forth below, Plaintiffs' motion to enjoin projects inconsistent with the 2001 Framework pending resolution of their appeal is denied.  As also explained below, Plaintiffs' motion to stay the Forest Service's obligation to complete a SEIS by May 1, 2010, which is not opposed by the Federal Defendants, will be granted.

///

///

///

///

///

---

[1] See Sierra Nevada Forest Prot. Campaign ("SNFPC") v. Rey, 573 F. Supp. 2d 1316 (E.D. Cal. 2008) [Dkt. No. 255]; California ("California") v. U.S. Dep't of Agric., No. 05-211, 2008 WL 3863479 (E.D. Cal. Aug. 19 and Sept. 3, 2008) [Dkt. No. 175]; Pacific Rivers Council ("PRC") v. U.S. Forest Serv., No. 05-953, 2008 WL 4291209 (E.D. Cal. Sept. 18, 2008) [Dkt. No. 153]; California Forestry Ass'n ("CFA") v. Bosworth, No. 05-905, 2008 WL 4370074 (E.D. Cal. Sept. 24, 2008) [Dkt. No. 131].

1

**STANDARD**

2    **A.    Injunctions Pending Appeal**

3

4        Like any injunction, an injunction pending appeal is "an

5    extraordinary remedy that should be granted sparingly." <u>Arizona</u>

6    <u>Contractors Ass'n, Inc. v. Candelaria</u>, 2008 WL 486002, at *1 (D.

7    Ariz. 2008).  As with a preliminary injunction, to qualify for an

8    injunction pending appeal, the moving party must show:  (1) that

9    it is likely to succeed on the merits; (2) that it is likely to

10   suffer irreparable harm in the absence of preliminary relief;

11   (3) that the balance of equities tips in its favor; and (4) that

12   an injunction is in the public interest.  <u>Winter v. NRDC</u>, 129 S.

13   Ct. 365, 374 (2008); <u>Stormans, Inc. v. Selecky</u>, 586 F.3d 1109,

14   1127 (9th Cir. 2009), quoting <u>Winter</u>, 129 S. Ct. at 374.

15       Because it "is an extraordinary and drastic remedy," <u>Munaf</u>

16   <u>v. Geren</u>, 128 S. Ct. 2207, 2219 (2008) (citation omitted), an

17   injunction "should not be granted unless the movant, *by a clear*

18   *showing*, carries the burden of persuasion." <u>Mazurek v.</u>

19   <u>Armstrong</u>, 520 U.S. 968, 972 (1997) (citation omitted).  If a

20   plaintiff fails to meet its burden on any of the four

21   requirements for injunctive relief, its request must be denied.

22   <u>Winter</u>, 129 S. Ct. at 376 (denying motion for injunctive relief

23   based on the public interest and balance of hardship factors

24   alone, where court assumed a likelihood of success on the merits

25   of NEPA claims and irreparable injury to endangered species).

26   ///

27   ///

28   ///

1    **B.    Stays Pending Appeal**

2

3        While stays pending appeal and injunctions pending appeal

4    are distinct, <u>Nken v. Holder</u>, 129 S. Ct. 1749, 1758 (2009), they

5    involve substantially the same judicial inquiry.  <u>Id</u>. at 1761

6    (citing <u>Winter</u>, 129 S. Ct. 376-77).  In determining whether a

7    stay is appropriate, a court should consider: "(1) whether the

8    stay applicant has made a strong showing that he is likely to

9    succeed on the merits; (2) whether the applicant will be

10   irreparably injured absent a stay; (3) whether issuance of the

11   stay will substantially injure the other parties interested in

12   the proceeding; and (4) where the public interest lies."  <u>Hilton</u>

13   <u>v. Braunskill</u>, 481 U.S. 770, 776 (1987).

14       "A stay is an 'intrusion into the ordinary processes of

15   administration and judicial review,' and accordingly 'is not a

16   matter of right, even if irreparable injury might otherwise

17   result to the appellant.'"  <u>Nken</u>, 129 S. Ct. at 1757 (citations

18   omitted).  "The party requesting a stay bears the burden of

19   showing that the circumstances justify an exercise of that

20   discretion."  <u>Id</u>. at 1761.

21

22                              **ANALYSIS**

23

24       Plaintiffs ask this Court to enjoin the Forest Service from

25   implementing any timber harvest projects inconsistent with the

26   2001 Framework pending appeal.  Plaintiffs further request a stay

27   of the Forest Service's obligation to prepare a SEIS pending

28   appeal.  As set forth below, Plaintiffs' first request is denied.

                                     4

This Court has previously considered the merits of Plaintiffs' challenge and weighed the harms of imposing the injunctive relief they now seek.  There is no basis for the Court to reconsider its prior conclusions at this time.  Defendants do not oppose Plaintiffs' second request.  Because Plaintiffs' appeal could ultimately alter the scope of the SEIS to be prepared by the Forest Service, this Court agrees that it makes sense to stay the Forest Service's obligation until the outcome of the appeal is known.

I.   **PLAINTIFS ARE NOT ENTITLED TO AN INJUNCTION PENDING APPEAL**

   A.   **Plaintiffs Have Not Demonstrated a Likelihood of Success on the Merits of their Appeal.**

   This Court has considered the legality of the 2004 Framework in motions for summary judgment filed in each of the four related cases.  See <u>Sierra Nevada Forest Prot. Campaign</u> <u>("SNFPC") v. Rey</u>, 573 F. Supp. 2d 1316 (E.D. Cal. 2008); <u>California ("California") v. U.S. Dep't of Agric.</u>, No. 05-211, 2008 WL 3863479 (E.D. Cal. Aug. 19 and Sept. 3, 2008); <u>Pacific</u> <u>Rivers Council ("PRC") v. U.S. Forest Serv.</u>, No. 05-953, 2008 WL 4291209 (E.D. Cal. Sept. 18, 2008); <u>California Forestry Ass'n</u> <u>("CFA") v. Bosworth</u>, No. 05-905, 2008 WL 4370074 (E.D. Cal. Sept. 24, 2008).  With a single exception related to the range of alternatives, this Court has found that the SEIS prepared for the 2004 Framework complied with the law.

///

///

///

1   Plaintiffs now ask this Court to revisit its findings on
2   summary judgment and hold – without advancing any new argument or
3   explanation of how this Court erred – that Plaintiffs have
4   demonstrated a likelihood of success on the merits of their
5   appeal.  This Court declines Plaintiffs' invitation to reconsider
6   its prior decisions and concludes, consistent with its prior
7   findings, that Plaintiffs fail to demonstrate a likelihood of
8   success on the merits.

9   Plaintiffs fail to demonstrate a likelihood of success on
10  their various challenges under the National Environmental Policy
11  Act ("NEPA") to the Framework.  Contrary to Plaintiffs'
12  allegations, the Forest Service fully disclosed opposing views
13  regarding the 2004 Framework's impacts on wildlife and properly
14  disclosed the Framework's short-term impacts to wildlife.  <u>See</u>
15  <u>SNFPC v. Rey</u>, 573 F. Supp. 2d at 1338-45.  Plaintiffs fail to
16  identify any error in this Court's analysis and, by simply
17  repeating their prior arguments, provide no grounds for this
18  Court to revisit the conclusions reached in its summary judgment
19  decision.  <u>See</u> <u>Lands Council v. Packard</u>, 391 F. Supp. 2d 869, 871
20  (D. Idaho 2005) (holding plaintiffs fail to demonstrate
21  likelihood of success on the merits where they simply "restate[]
22  the arguments previously raised").

23  While Plaintiffs did prevail on their claim that the SEIS
24  failed to address a proper range of alternatives, the favorable
25  outcome they obtained in that regard cannot support their motion
26  for an injunction pending appeal.  Federal Defendants have not
27  appealed this Court's ruling on the range of alternatives and
28  that issue is thus not before the Court of Appeals.

6

1   The adequacy of the range of alternatives analysis is thus
2   irrelevant to the question of whether Plaintiffs have a
3   likelihood of success on the merits of *their appeal*. <u>Comm. on</u>
4   <u>the Judiciary v. Miers</u>, 575 F. Supp. 2d 201, 203 (D.D.C. 2008)
5   ("[t]he stay pending appeal inquiry looks to the likelihood of
6   success on the merits of the appeal itself.").

7       Plaintiffs also fail to demonstrate a likelihood of success
8   on their claims that the 2004 Framework violated the National
9   Forest Management Act ("NFMA").  First, Plaintiffs' broad
10  substantive NFMA challenge cannot be brought against the
11  Framework as a whole.  Instead, NFMA claims are ripe only to the
12  extent that they are brought in the context of a site-specific
13  project.  <u>SNFPA v. Rey</u>, 573 F. Supp. 2d at 1328-29.  <u>See</u> <u>also</u>
14  <u>Ecology Ctr. v. Castaneda</u>, 574 F.3d 652, 658  (9th Cir. 2009)
15  ("Forest-wide management practices and monitoring efforts, or
16  lack thereof, are generally not amenable to suit under the APA
17  because they do not constitute final agency actions.  Challenges
18  to forest-wide management practices or claims must be made in the
19  context of site-specific actions.") (citations omitted).  Second,
20  assuming Plaintiffs' programmatic NFMA claims are ripe, those
21  claims fail on the merits as set forth in this Court's prior
22  findings on summary judgment.  The record shows that the 2004
23  Framework does not threaten the viability of the California
24  spotted owl, the Pacific fisher or the American marten.
25  ///
26  ///
27  ///
28  ///

Plaintiffs also fail to demonstrate a likelihood of success on the merits of their various challenges to the Basin Project. This Court previously rejected Plaintiffs' claim that the Basin Environmental Assessment ("EA") did not adequately consider cumulative impacts and that the Forest Service failed to adequately involve the public in the preparation of the EA. SNFPA v. Rey, 573 F. Supp. 2d at 1345-47. Plaintiffs present no grounds for revisiting those conclusions now. Finally, Plaintiffs' challenge to the Forest Service's monitoring of Management Indicator Species ("MIS") was mooted by a 2007 Amendment to the Plumas National Forest LRMP. Id. at 1335-36. Even absent the 2007 Amendment, the Forest Service properly monitored the impacts of the Basin Project on applicable MIS.

In sum, because this Court believes its findings on summary judgment were proper and supported by the record, it concludes that Plaintiffs have not demonstrated a likelihood that they will prevail on the merits of their appeal.


**B.   Plaintiffs Will Not Be Irreparably Harmed in the Absence of an Injunction**

Plaintiffs assert, based solely on their prior filings in this matter, that in the absence of an injunction barring all timber harvest activities inconsistent with the 2001 Framework, "irreparable harm to old forests and wildlife will result." Pls.' Mot. for Inj. Pending Appeal at 2. This claim fails.

///

///

///

First, Plaintiffs' generic and blanket assertion of harm fails to carry their burden of demonstrating that they face actual and imminent harm from projects that will proceed during the pendency of their appeal.  Second, the record in this case makes clear that implementation of the 2004 Framework will not irreparably harm old-forest dependant wildlife.  To obtain an injunction pending appeal, plaintiffs bear the burden of demonstrating that they are "'likely to suffer irreparable harm *before a decision on the merits can be rendered.'*"  <u>Winter</u>, 129 S. Ct. at 375 (quoting 11A C. Wright, A. Miller, & M. Kane, <u>Federal Practice and Procedure</u> § 2948.1, p. 139 (2d ed.1995)) (emphasis added).  Assertions of harm cannot be generic: they must be precise and detailed enough to enable the Court to evaluate the "harms pertaining to injunctive relief in the context" of the scope of the injunction sought.  <u>Sierra Forest Legacy v. Rey</u>, 577 F.3d 1015, 1022 (9th Cir. 2009).  Plaintiffs provide no such context.  Indeed, Plaintiffs fail to even name projects likely to proceed during the pendency of their appeal, much less demonstrate that their members actually use the forest resource that will be impacted by any such projects and that their members' use and enjoyment of those resources is in imminent danger of being irreparably injured if the projects are not enjoined.  <u>C.f. Summers v. Earth Island Inst</u>., 129 S. Ct. 1142 (2009) (holding plaintiff lacked standing where it failed to "allege that any particular timber sale or other project claimed to be . . . [unlawful] will impede a specific and concrete plan of [plaintiff's] to enjoy the National Forests.").

///

1  In the absence of a showing that Plaintiffs face irreparable
2  injury from a particular timber sale that will go forward during
3  the pendency of their appeal, Plaintiffs have failed to carry
4  their burden, and on this basis alone their motion for injunctive
5  relief fails.

6      Even if Plaintiffs' request for injunctive relief could be
7  adjudicated in the absence of an allegation that specific
8  projects pose concrete and imminent harm to their interests
9  during the pendency of their appeal, this Court concludes –
10 consistent with its findings on summary judgment and its decision
11 on remedy – that implementation of the 2004 Framework will not
12 irreparably harm the owl, fisher or marten.  See, e.g., SNFPC v.
13 Rey, 573 F. Supp. 2d at 1137 (finding impacts of the Framework to
14 old-growth habitat used by the old-forest species will be
15 "minimal"); id. (noting that under the 2004 Framework, no
16 treatments are expected in 86 percent of Old Forest Emphasis
17 Areas ("OFEAs"), and only minimal amounts of the most important
18 owl habitat areas, such as Protected Activity Centers ("PACs")
19 and Home Range Core Areas ("HCRAs"), will be impacted).

20     Indeed, far from causing irreparable harm, the evidence
21 demonstrates that – when measured in terms of impact to the owl,
22 fisher and marten – management under the 2004 Framework is
23 environmentally superior to management under the 2001 Framework.
24 See SNFPC v. Rey, 573 F. Supp. 2d at 1139 ("[T]he amount of old
25 forest is projected to increase across the bioregion" under the
26 2004 Framework.);  SNFPA 2996-97, 3040-42, 3049-51 (concluding
27 that in the long term, the 2004 Framework will result in more
28 habitat for old forest species than the 2001 Framework);

Declaration of Donald Yasuda [Dkt. No.270-4] at ¶ 22 ("it is my continued professional opinion that the old forest dependent species within the Sierra Nevada, such as the California spotted owl, are best provided for by continuing to implement the management strategy and direction in the 2004 Framework."); Declaration of Diane Macfarlane [Dkt. No.270-3] at ¶ 14 ("Having been a primary author of the 2001 Framework forest carnivore analysis, and having reviewed the effects analysis produced by Don Yasuda for the 2004 Framework SEIS, it is my professional opinion that old forest habitats for martens and fishers within the Sierra Nevada can be best retained by applying the 2004 SEIS management strategy....").

The Court concludes that Plaintiffs' claim of irreparable harm fails.  As a threshold matter, Plaintiffs have failed to carry their burden of demonstrating that they in fact face imminent and irreparable harm during the pendency of their appeal.  Second, it is clear that continued operation under the 2004 Framework does not pose any risk of irreparable harm to the owl, fisher or marten.

**C.   The Balance of Equities and the Public Interest Weigh Against an Injunction Pending Appeal.**

In addition to demonstrating a likelihood of success on the merits and irreparable harm, Plaintiffs must demonstrate that the balance of equities tips in their favor and that an injunction is in the public interest.  <u>Winter v. NRDC</u>, 129 S. Ct. at 374.

///

///

They fail to do either: the balance of equities and public
interest both militate against enjoining 2004 Framework projects
during the pendency of Plaintiffs' appeal.

        **1.**    **The Public Interest in Reducing the Threat of
Severe Wildfire will be Harmed by an Injunction
Pending Appeal.**

Enjoining the Forest Service from implementing fuel
reduction projects pursuant to the 2004 Framework would impede
the Forest Service's ability to address the threat of
catastrophic wildfire.  The reduction of the risk posed by
catastrophic wildfire is undeniably in the public interest.
Wildfire poses a risk to human life and to property, and
constitutes the single greatest threat to the survival of the
California spotted owl, Pacific fisher and American marten in the
Sierra Nevada.  See, e.g., 71 Fed. Reg. 29,886, 29,897 (May 24,
2006) (U.S. Fish and Wildlife Service determined that
catastrophic wildfire is a far greater risk to spotted owl
viability than any short-term effects of fuel management
activities on owl habitat); Declaration of Donald Yasuda [Dkt.
No.270-4] at ¶¶ 6-7 (noting that from 2003 to the present, 33 owl
PACs have been lost to fire); Declaration of Diane Macfarlane
[Dkt. No.270-3] at ¶ 9 ("Large-scale environmentally stochastic
events such as severe fire appear to pose a greater threat to the
marten populations and distribution in the northern Sierra Nevada
than carefully planned vegetation treatments that can be
strategically designed to minimize and distribute effects to
marten and fisher."); and id. at ¶ 13

12

1  ("The greatest threat to fisher persistence in the northen and
2  southern Sierra Nevada was habitat modification due to severe
3  wildfire....").

4      The record shows that the risk of wildfire cannot be
5  adequately addressed by projects consistent with the 2001
6  Framework.  While the 2001 Framework's 20" diameter limit and 50%
7  minimum canopy cover may, in the abstract, generally be adequate
8  to meet fuel reduction needs, the 2001 Framework contains a
9  series of overlapping standards and guidelines which cumulatively
10  mean the maximum permitted treatments levels are rarely attained.
11  See Declaration of Bernhard Bahro [Dkt. No.270-9] at ¶ 11.

12      Moreover, as this Court has already recognized, the 2004
13  Framework is more effective at modifying fire behavior.  PRC,
14  2008 WL 4291209, at *17 (noting the differences in rate of
15  spread, flame length, scorch height, and projected mortality).
16  The 2004 Framework is also more effective at fire risk reduction
17  than the 2001 Framework because it "provides more flexibility to
18  strategically locate treatments across the landscape." PRC, 2008
19  WL 4291209, at *17.  See also SNFPA 3291 (noting the 2001
20  Framework establishes "a complex set of standards and guidelines
21  that create an incentive to locate treatments to avoid areas
22  where treatment intensity would be restricted," rather than in
23  the most effective pattern for fire risk reduction).

24      Finally, contrary to Plaintiffs apparent assumption,
25  projects developed under the 2004 Framework cannot simply be
26  "implemented" consistent with the 2001 Framework.

27  ///

28  ///

1   As Forest Service employee Angela Parker explained in her

2   declaration during the remedy proceedings, "[m]uch of the

3   existing NEPA analysis and wildlife surveys for these [eleven

4   currently planned HFQLG] projects would likely not be compliant

5   with the 2001 Framework, due to different land allocations and

6   standards and guidelines....[, and] if new wildlife surveys and

7   supplemental NEPA documentation were required, the cost to

8   re-analyze these 11 NEPA documents alone would be approximately

9   $12 million, and the time to re-analyze these projects could take

10  up to 18 months per project."   Declaration of Angela Parker

11  [Dkt. No.270-6] at ¶ 6.   Given the cost and length of time needed

12  to reconfigure existing projects to make them consistent with the

13  2001 Framework, an injunction obligating the Forest Service to

14  adhere to the 2001 Framework pending appeal is likely to be

15  tantamount to a shut-down of major forest management projects on

16  all eleven national forests for the duration of the appeal.

17      Thus, it is clear that the 2004 Framework allows for more

18  effective fire reduction than its predecessor, and an injunction

19  prohibiting the Forest Service from implementing projects

20  consistent with the 2004 Framework will harm the Forest Service's

21  ability to reduce fire risk and the public's interest in having

22  such work accomplished during the pendency of Plaintiffs' appeal.

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

1          **2.   The Public Interest in Implementation of the**
2               **HFQLG Act Pilot Project will be Harmed by an**
3               **Injunction Pending Appeal**

4          An injunction pending appeal which limits the Forest Service
5     to implementing projects consistent with the 2001 Framework would
6     also harm the public's interest in seeing the results of the
7     Congressionally mandated Herger-Feinstein Quincy Library Group
8     ("HFQLG") pilot project.
9          This Court has previously concluded that only the 2004
10    Framework allows full implemention of the HFQLG pilot project,
11    and the Court now concludes that full and timely implementation
12    of the HFQLG pilot project is in the public interest.   The pilot
13    project represents a Congressionally mandated experiment designed
14    to test several timber management techniques while promoting
15    economic stability in local communities, and the management
16    lessons it may teach are of value to the public at large.   The
17    project, however, has fallen far behind its congressionally
18    established timeline, and is now – after two extensions by
19    Congress – scheduled to end on September 30, 2012.   Declaration
20    of Angela Parker [Dkt. No.270-6] at ¶¶3-5.   Yet, as of the end of
21    2007, only about 39 percent of the pilot project acreage had been
22    treated.   Id.   at ¶ 4.
23    ///
24    ///
25    ///
26    ///
27    ///
28    ///

1  Given the time and expense of reconfiguring the planned HFQLG
2  area projects to insure consistency with the 2001 Framework, id.
3  at ¶ 6, an injunction lasting the duration it will likely take to
4  resolve Plaintiffs' appeal would mean a temporary shut-down of
5  pilot project work, and would mean the congressionally directed
6  goals of thee pilot project will not be met within the existing
7  statutory deadline.[2]  The public's interest in seeing pilot
8  project work completed and in benefitting from the lessons to be
9  learned therefore weighs strongly against an injunction pending
10 appeal.

11

12              **3.    The Public Interest in Forest Health will be**
                        **Harmed by an Injunction Pending Appeal.**
13

14      Plaintiffs' motion for an injunction pending appeal is
15 silent as to the impacts of their request on forest health
16 concerns beyond addressing the threat of wildfire.  Their
17 requested injunction nevertheless impacts forest health issues
18 beyond wildfire, including the stresses caused by climate change,
19 drought and insect damage.  In order to effectively design
20 management activities to address these forest health concerns,
21 the Forest Service needs the flexibility to remove trees of
22 larger diameter than allowed under the 2001 Framework and to
23 reduce canopy cover below the levels allowed in the 2001
24 Framework.

25

26      [2] See United States Court of Appeals for the Ninth Circuit,
   Frequently Asked Questions, http://www.ca9.uscourts.gov/
27 content/view.php?pk_id=0000000084, (indicating oral argument is
   approximately 12-20 months after notice of appeal and "most cases
28 are decided within 3 months to a year" after oral argument).

1    See Declaration of Kathleen Morse [Dkt. No.270-5] at ¶ 3

2    (imposition of the 2001 Framework would "impede management

3    activity to such a degree that critical fuel reduction, forest

4    health and ecosystem restoration objective cannot be attained");

5    Declaration of Joe Sherlock [Dkt. No. 270-13] at ¶ 9 (responding

6    to drought may require removal of trees over 20" in diameter and

7    reduction of canopy cover below 50%); Declaration of Nancy Grulke

8    [Dkt. No.270-14] at ¶ 10 ("Depending on the microenvironment and

9    the density of the stand, it may be appropriate to harvest trees

10   over 20" and/or reduce canopy cover less than 50% to allow the

11   removal of a sufficient number of tress to reduce competition,

12   promote tree health, reduce the level of drought stress

13   experienced, and reduce tree mortality from both drought stress

14   and bark beetle outbreaks."); and Declaration of Christopher J.

15   Fettig Decl. [Dkt. No. 270-15] at ¶ 13 (reducing stand

16   susceptibility to beetle infestation may require lower stand

17   density and removal of larger trees than necessary to reduce fire

18   risk).  An injunction restricting the Forest Service to projects

19   consistent with the 2001 Framework would restrict the ability of

20   land managers to address the multitude of concerns involved in

21   developing and retaining healthy and resilient forests, and given

22   the time required to reconfigure existing projects to make them

23   2001 compliant likely means a shutdown of major forest management

24   projects during the duration of the appeal.

25   ///

26   ///

27   ///

28   ///

17

**4.   Plaintiffs' Injunction Pending Appeal will Harm the Local Timber and Biomass Industries.**

An injunction restricting the Forest Service to implementation of projects consistent with the 2001 Framework will also harm both the local timber and local biomass industry. Reducing harvest to the levels contemplated in the 2001 Framework will lead to closures of some of the few remaining sawmills in the Sierra Nevada as well as some biomass power plants.  See Declaration of Donald Golnick [Dkt. No.270-16] at ¶¶ 11, 13. This harm is not purely economic: commercial timber mills and biomass facilities provide the infrastructure necessary to remove and process forest products without which the Forest Service's ability to manage its lands is compromised.  See id.

**5.   The General Public Interest in NEPA Compliance Does Not Support Plaintiffs' Motion for an Injunction Pending Appeal**

Plaintiffs suggest that the public interest "expressed by Congress through enactment of NEPA supports an injunction" pending appeal.  Pls.' Mot. for Inj. Pending Appeal at 2.  To the extent that Plaintiffs are asserting that injunctions are somehow favored where violations of NEPA are alleged they err.  The Supreme Court and the Ninth Circuit have made clear that the traditional test for injunctive relief is not altered by invocation of NEPA.

///

///

///

18

Winter, 129 S. Ct. at 381 (even assuming violation of NEPA, the entry of a preliminary injunction was contrary to the public interest and therefore an abuse of discretion); Lands Council v. McNair, 537 F.3d 981, 1005 (9th Cir. 2008) (en banc) ("[o]ur law does not...allow us to abandon a balance of harms analysis just because a potential environmental injury is at issue."). Indeed, in an early round of this litigation, the Ninth Circuit found Plaintiffs had demonstrated a likelihood of success on the merits of a NEPA claim, but nonetheless remanded the matter to this Court to assess the other injunction factors, "express[ing] no opinion as to whether an injunction should issue in this action." 577 F.3d at 1024 (citation omitted).

### 6. The Balance of Harms and Public Interest Favor Denial of Plaintiffs' Motion for an Injunction Pending Appeal.

For the reasons set forth above, this Court concludes that the injunction sought by Plaintiffs is not in the public interest, and the balance of harms – which includes impacts to wildlife, fire reduction, the HFQLG pilot project, forest health, timber production, and industry and local communities – tips decidedly against the imposition of Plaintiffs' proposed injunction. Indeed, this Court has already weighed the harms and concluded reimposition of the 2001 Framework is not appropriate:

///

///

///

///

> The balancing of hardships required in assessing injunctive relief does not appear to favor Plaintiffs' position....the 2004 Framework offers better long-term forest health, increased protection to species in the long run by improved forest management, reduced fire risk to people and communities, and economic benefits to stagnating forest industries in the form of increased treatment facilities.

Memorandum and Order, 05-cv-00205-MCE [Dkt. No. 304] at 10. There is no cause to revisit this conclusion in response to Plaintiffs' Motion for Injunction pending appeal.  In fact, as discussed above, Plaintiffs' arguments are even less compelling now, given the difficulty, if not impossibility, of converting 2004-Framework projects to 2001-Framework projects during the pendency of the appeal and actually implementing them on the ground.

**II.  PLAINTIFFS' REQUEST TO STAY THE FOREST SERVICE'S OBLIGATION TO PREPARE A SEIS BY MAY 1, 2010 IS GRANTED**

This Court has directed the Forest Service to complete a SEIS addressing the limited procedural defects in the 2004 Framework EIS by May 1, 2010.  Memorandum and Order, 05-cv-00205 [Dkt. No. 304] at 14.  In their motion for an injunction pending appeal, Plaintiffs also ask that this Court stay the Forest Service's obligation to prepare a SEIS to avoid expenditure of federal, state and private resources on the preparation of a document whose scope may be altered by the resolution of their appeal.

///
///
///

20

Federal Defendants have indicated they do not oppose this request and acknowledge that the outcome of the Plaintiffs' appeal could alter the scope of the supplemental NEPA analysis to be prepared by the Forest Service.  The Court concurs that it makes sense to postpone the expenditure of time and resources on the NEPA process until after the resolution of this matter on appeal, when the full parameters of the necessary NEPA analysis are known and can be addressed in a single document.

Federal Defendants have requested that, should the Court stay the obligation to prepare a SEIS, it clarify its order to make clear that the SEIS process be completed at least six-months after the stay is lifted.  Otherwise, the Forest Service faces the risk that the stay is lifted shortly before or after the May 1 deadline, leaving the Forest Service unable to comply with the Court's Order.  The Court finds this modification appropriate.

**CONCLUSION**

Given the foregoing, the Court makes the following orders:

1.   Plaintiffs' motion for an injunction pending appeal is DENIED, and

2.   Plaintiffs' motion to stay the requirement that the Forest Service complete a SEIS by May 1, 2010, is GRANTED, and

3.   The Forest Service is directed to complete the SEIS process six months after this Court's stay is lifted, and

///

///

///

21

    4.    Should the resolution of the appeal process or other intervening circumstances make compliance with the deadline for completion of the SEIS impracticable, the Forest Service shall promptly notify the Court and seek appropriate relief.

    IT IS SO ORDERED.

Dated: February 26, 2010

                                    _____
                                    MORRISON C. ENGLAND, JR.
                                    UNITED STATES DISTRICT JUDGE